UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| DIXIE MILES, JEFF MILES,<br><br>                    Plaintiffs,<br><br>        v.<br><br>STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,<br><br>                    Defendant. | CASE NO. C20-5855 MJP<br><br>ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, DEFENDANT'S MOTION FOR RELIEF FROM DEADLINES, AND PLAINTIFFS' MOTION TO CONTINUE |

There are three motions before the Court in this action for underinsured motorist benefits: Defendant's motion for summary judgment (Dkt Nos. 10, 11, 12, 24, 25, 26, 27, 29), Defendant's motion for relief from deadlines (Dkt. Nos. 13, 19, 20, 21), and Plaintiffs' motion to continue Defendant's summary judgment motion (Dkt. Nos. 15, 16, 22, 23, 28).  The Court has considered the motions and DENIES each one for the reasons set forth herein.

**BACKGROUND**

Plaintiffs Dixie and Jeff Miles held insurance policies from Defendant State Farm Mutual Automobile Insurance Company ("State Farm") for underinsured motorist (UIM) benefits.  (Dkt.

No. 1, Ex. A ("Complaint" or "Compl.") at 2.) They had policies for several cars they owned, including a Chevy Malibu and a GMC box van. Id. The policy limit for compensation for physical injuries caused by an accident with an underinsured motorist under the policy for the Malibu was $25,000 and the limit under the policy for the GMC was $500,000. Id. (See Dkt. No. 12, Declaration of Brenda Toney ("Toney Decl."), Exs. B & C.) Plaintiffs were current on their premiums and were both listed as the named insureds under both policies. Compl. at 2.

Dixie Miles suffered severe physical injuries in an accident involving an underinsured motorist while driving the Malibu. Id. State Farm initially stated that the policy limit of $25,000 applied and tendered a check for $25,000. (Toney Decl., Ex. A.) After Plaintiffs' counsel contacted State Farm and argued that the higher limit should apply, State Farm replied with a letter stating that they agreed, the $500,000 limit did apply. Id., Exs. D & E. State Farm then reversed course again and stated that their last letter was incorrect—in fact, the $25,000 limit applied—and denied coverage under the $500,000 limit. Id., Ex. F. But before receiving State Farm's letter with the change in position, Plaintiffs' counsel had returned the $25,000 check. (Dkt. No. 24, Declaration of Dixie Miles ("Miles Decl."), Ex. A at 2.)

The policy contains several provisions at the center of the dispute here.[1] The policy for underinsured motorist benefits is as follows:

> We will pay compensatory damages for bodily injury an insured is legally entitled to recover from the owner or driver of an underinsured motor vehicle. The bodily injury must be:
>
> 1. sustained by an insured; and

---

[1] In its motion, Defendant included the declarations page for both vehicles but only the policy booklet for the GMC. (Toney Decl., Ex. B & C.) However, the policy booklet is the same for both vehicles, with any differences, such as for coverage limit, identified in the declarations page. See id., Ex. B ("your policy consists of this declarations page, the policy booklet – Form 9847A, and any endorsements that apply, including those issued to you with any subsequent renewal notice") and Ex. C (same; the policy booklet included is identified as Form 9847A).

>   2. caused by an accident that involves the operation, maintenance, or use of an underinsured motor vehicle as a motor vehicle.

(Toney Decl., Ex. C at 20.) "Insured" includes the policy holder and resident relatives. Id.

The policy has exclusions for UIM coverage. The relevant provision states there is no coverage "for an insured who sustains bodily injury while occupying . . . a motor vehicle owned by or available for the regular use of you or any resident relative if it is not your car or a newly acquired car." Id. at 22.

The policy defines "your car" as "the vehicle shown under your car on the Declarations page. Your car does not include a vehicle that you no longer own or lease." Id. at 5. The Chevy Malibu is listed under "your car" on the Declarations page for policy number 191 2559-E29-47A. Id., Ex. B. The GMC is listed under "your car" on the Declarations page for policy number 191 5901-E28-47. Id., Ex. C.

The policy also includes a provision for when other UIM benefits apply to personal-injury coverage. It states, in relevant part:

>   1. If Underinsured Motor Vehicle Bodily Injury Coverage provided by this policy and one or more other vehicle policies issued to you or any resident relative by one or more of the State Farm Companies apply to the same bodily injury, then:
>
>   >   a. the Underinsured Motor Vehicle Bodily Injury Coverage limits of such policies will not be added together to determine the most that may be paid; and
>
>   >   b. the maximum amount that may be paid from all such policies combined is the single highest applicable limit provided by any one of the policies. We may choose one or more policies from which to make payment.

Id. at 23.

## DISCUSSION

Defendant moves for summary judgment on whether the UIM coverage under the GMC policy limit of $500,000 applies under (a) policy interpretation, (b), waiver, or (c) estoppel. Interpreting an insurance policy is a matter of law. Robbins v. Mason Cty. Title Ins. Co., 195

1  Wn.2d 618, 626 (2020).  Courts give the language of the policy its plain meaning, construed

2  according to the understanding of "the average person purchasing insurance."  Id.  Courts

3  enforce policy language that is clear and unambiguous.  Quadrant Corp. v. Am. States Ins. Co.,

4  154 Wn.2d 165, 171 (2005).  A policy is ambiguous if it is susceptible to more than one

5  reasonable interpretation.  Id.  "Any ambiguity in the policy is interpreted in favor of the

6  insured."  Robbins, 195 Wn.2d at 626.  This is the case "even though the insurer may have

7  intended another meaning."  National Union Fire Ins. Co. of Pittsburgh, Pa. v. Zuver, 110 Wn.2d

8  207, 210 (1988).  Policy exclusions are also "strictly construed against the insurer."  Id.

9  Exclusions "should be spelled out for the policyholder in clear and unmistakable language."

10 Dairyland Ins. Co. v. Ward, 83 Wash. 2d 353, 359 (1974).

11         Washington requires car-insurance providers to offer UIM coverage.  Wash. Rev. Code

12 § 48.22.030(2).  Washington's UIM statute was enacted "to protect innocent victims of motorists

13 of underinsured motor vehicles."  Wash. Rev. Code § 48.22.030(12).  The purpose of UIM

14 insurance is to allow an injured party to recover damages they would have received if the party at

15 fault had insurance liability limits that were as high as the injured party's UIM limits.  The public

16 policy underlying UIM coverage is to crate "a second layer of floating protection for the insured"

17 who is injured by a motorist with insufficient coverage.  Greengo v. Pub. Emps. Mut. Ins. Co.,

18 135 Wn.2d 799, 810 (1998).

19         The statute permits one exclusion relevant here.  The insurer is not required to offer UIM

20 coverage if the insured is "operating or occupying a motor vehicle owned or available for the

21 regular use by the named insured or any family member, and which is not insured under the

22 liability coverage of the policy."  Wash. Rev. Code § 48.22.030(2).

23

24

The statute also permits insurance companies to include what is commonly referred to as an "anti-stacking provision," which prevents an insured from combining limits under multiple policies into an aggregate amount that is higher than any single policy limit. "The policy may provide that if an injured person has other similar insurance available to him or her under other policies, the total limits of liability of all coverages shall not exceed the higher of the applicable limits of the respective coverages." Wash. Rev. Code § 48.22.030(6).

Washington courts construe UIM provisions broadly to find coverage:

> We have recognized the Legislature intended broad UIM coverage when it enacted our UIM statute. This court has averred it will liberally construe the statute to uphold this legislative mandate and will scrutinize exclusionary clauses to ensure the mandate for broad coverage is neither whittled away nor eroded.
>
> In determining the validity of a UIM exclusionary clause the court applies a two-part test which asks: "Does the proposed exclusion conflict with the express language of the UIM statute? If not, is the exclusion contrary to the UIM statute's declared public policy?" A UIM exclusionary clause will be upheld only if we can answer both inquiries in the negative.

Greengo, at 805–06.

State Farm argues UIM coverage under the GMC policy is excluded because Dixie Miles was driving a car the Miles owned other than the GMC, even though that car was also insured by State Farm. (Dkt. No. 10.) Under the exclusion, there is no UIM coverage "for an insured who sustains bodily injury while occupying . . . a motor vehicle owned by or available for the regular use of you or any resident relative if it is not your car or a newly acquired car." (Toney Decl., Ex. C at 22.) "Your car" is defined as the car listed on the Declarations page. There are separate Declarations pages for each vehicle under separate policy numbers. (See Toney Decl., Exs. B & C.) Under the GMC policy, the GMC is the only car listed under "your car" on the Declarations page. According to State Farm, because Dixie Miles was driving the Malibu, which is insured

by State Farm under a separate policy, UIM coverage is excluded, and Plaintiffs are limited to the $25,000 limit under the Malibu policy.

For a number of reasons, the Court declines to adopt State Farm's interpretation on summary judgment, where the Court must construe all facts and inferences in favor of Plaintiffs. As an initial matter, all of the relevant principles governing policy interpretation under Washington law summarized above favor Plaintiffs: courts read policies from the perspective of the common person, not the expert; policy language is construed against the insurer and in favor of the insured; courts construe UIM provisions broadly to find coverage; exclusions must be clearly spelled out and are strictly construed against the insurer. State Farm's highly technical and formalistic interpretation cannot bear the weight of these principles.

State Farm's interpretation also ignores the tension between the UIM policy exclusion and the provision for when other UIM coverage applies. That language provides that if UIM coverage "provided by this policy and one or more other vehicle policies issued to you or any resident relative by one or more of the State Farm Companies apply to the same bodily injury," State Farm will provide UIM coverage up to the single highest limit among the policies. (Toney Decl., Ex. C at 23.) This anti-stacking provision clearly presumes situations such as this, where an insured holds multiple State Farm policies. State Farm replies that this provision does not apply because of the exclusion. But Plaintiffs rightfully point out that this would mean they could get UIM coverage under the GMC policy for essentially any circumstance (e.g., as a pedestrian or as a passenger in someone else's car) *except* for driving the Malibu—even though the Malibu is also insured by State Farm. Even if such a result is not necessarily "absurd," it is at the very least counterintuitive and would go against the expectations of "the average person purchasing insurance." See Robbins v. Mason Cty. Title Ins. Co., 195 Wn.2d 618, 626 (2020).

1       In addition, State Farm's interpretation does not advance any of the recognized policies

2 behind enforcing this kind of exclusion in this context. "The twofold purpose of the 'use of other

3 automobiles' clause is (1) to prevent an insured from receiving coverage on all household cars or

4 another uninsured car of the insured by merely purchasing a single policy, and (2) to provide

5 coverage to the insured when engaged in the infrequent use of nonowned vehicles." Anderson v.

6 Am. Econ. Ins. Co., 43 Wn. App. 852, 858 (1986). Here, Plaintiffs have coverage for both cars

7 through State Farm. They are not asking the Court to find coverage for an uninsured car.

8       While State Farm's interpretation goes against all of the above, Plaintiffs propose another

9 reading of the UIM coverage exclusion. They argue that "your car" simply means any car

10 owned by an insured and insured by State Farm. Indeed, in the definitions page, which State

11 Farm relies on, "your car" is simply defined as "the vehicle shown under your car on the

12 Declarations page. Your car does not include a vehicle that you no longer own or lease."

13 (Toney Decl., Ex. C at 5.) As noted above, both the Malibu and the GMC are listed as "your

14 car" under separate declarations pages. Id., Exs. B & C. The definition excludes vehicles the

15 insured no longer owns or leases. It does not exclude vehicles the insured owns or leases which

16 are insured under a separate policy. But exclusions must be "spelled out for the policyholder in

17 clear and unmistakable language." Dairyland Ins. Co. v. Ward, 83 Wash. 2d 353, 359 (1974).

18 The Court finds Plaintiffs have proposed another reasonable interpretation such that the term

19 "your car" in the UIM exclusion provision is at the very least ambiguous.

20       Having found that State Farm has not carried its burden on the issue of policy

21 interpretation, it is clear that State Farm also cannot prevail on the issues of waiver or estoppel,

22 both of which depend on enforcing the exclusion according to State Farm's interpretation. The

23 Court therefore DENIES Defendant's motion for summary judgment.

24

1 | In addition, because the Court has denied the motion for summary judgment, State Farm's motion for relief from deadlines and Plaintiffs' motion to continue are both DENIED as moot.

The clerk is ordered to provide copies of this order to all counsel.

Dated July 23, 2021.

Marsha J. Pechman
United States Senior District Judge